JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Shaun Butts

**DEFENDANTS** Commissioner Charles Ramsey, Capt. David Bellamy, Lt. Steven McCollu, City of Philadelphia

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Alexis Zaffeces, Esq.
691 Washington Crossing Rd.
Newtown PA 18940

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC §1983
Brief description of cause:
Race Discrimination, Retaliation, Monell

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE   June 14, 2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 5425 Wynnefield Ave. Philadelphia PA 19131

Address of Defendant: City of Phila. Law Dept. 1515 Arch St. Phila. PA 19102

Place of Accident, Incident or Transaction: Philadelphia PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Alexis Zafferes , counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: 6-14-2013   Alexis Zafferes   308423
Attorney-at-Law                      Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6-14-2013   _____   308423
Attorney-at-Law                      Attorney I.D.#

CIV. 609 (6/08)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

Shaun Botts

v.

Ramsey, Bellemy
McCullum, City of Phila.

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

June 14, 2013        Alexis Zafferes        Plaintiff
Date                  Attorney-at-law        Attorney for

215-504-8115    f: 8116    Zafferesa@puricellilaw.com
Telephone        FAX Number        E-Mail Address

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAUN BUTTS, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | No.: |
| | : | |
| v. | : | JURY DEMAND |
| | : | |
| COMMISSIONER CHARLES RAMSEY, | : | |
| CAPTAIN DAVID BELLEMY | : | |
| LIEUTENANT STEVEN MCCULLUM, and | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

### I.    INTRODUCTION

1.      Plaintiff brings this civil action seeking all relief provided under the law including but not limited to compensatory, consequential, nominal, and punitive damages, reasonable attorney fees, litigation costs, and equitable relief including injunctive and declaratory relief such as but not limited to reinstatement and the declaration of an unconstitutional, void an invalid policy and conduct.

2.      The relief sought is provided under 42 U.S.C. §1983 et seq., and The United States Constitution and laws of the United States and for the deprivation *of;* the First Amendment constitutional rights to free speech and association, and equal protection; *for* retaliation for constitutionally and statutorily protected activities; for the deprivation of such federally secured rights by Defendant's while acting under color of state law; and the denial of equal employment terms and conditions because of race and/or retaliation for protected speech and association.

3.      The law was clearly established under the United States Constitution, law, statute, or regulations at the time of the Defendants acts, actions, and/or omissions, that caused or were known or should have been known by Defendant's would likely cause the deprivation.

1

4.      As is more fully set forth below, Defendants for all times related to the claims acted intentionally, recklessly, maliciously, with gross negligence, in reckless disregard of and/or in deliberate indifference to the Plaintiffs' rights.

5.      The Defendants at all times related to the claims knew or were on notice that their conduct would result or likely result in a deprivation of the rights, and that their conduct would subject them to liability under 42 U.S.C. § 1983 et seq.

6.      The conduct, acts, action or omission to act, was done under a policy practice or custom of the City of Philadelphia to deprive civil right by failing to properly supervise and/or train its employees.

## II.    JURISDICTION / VENUE

7.      Jurisdiction for the District Court to hear this action is afforded to the District Court pursuant to 42 U.S.C. § 1983 et seq., The Civil Rights Act of 1964 (42 U.S.C. 2000e), its amendments and under 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (3) and (4) (Civil Rights).

8.      Venue properly lies in the United States District Court for the Eastern District of Pennsylvania because the cause of action herein pleaded occurred in Philadelphia County which is located in the venue established for the District Court for the Eastern District of Pennsylvania.  Plaintiff invoke supplemental jurisdiction under 28 U.S.C. § 1367 so the District Court can resolve the state pendent claims.

## III.    PARTIES

9.      SHAUN BUTTS, (herein after Plaintiff) a black male, is a resident of and has domicile in the County of Philadelphia, Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.S.C. § 1983 et seq.), and an employee as intended under Title VII (42 U.S.C. 2000e et seq.).

10.     CITY OF PHILADELPHIA, (herein after Defendant) is a municipal entity that exists and acts only pursuant to state law; it is a employer as intended by The Civil Rights Act of 1964 (42 U.S.C. § 1983); and an employer as intended under Title VII (42 U.S.C. § 2000(e)); and employs more than 500 people.

11.     COMMISSIONER CHARLES RAMSEY (herein after Defendant, Comm. Ramsey), a Black male, is a resident of and has domicile in the County of Philadelphia, Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.SC. § 1983 et seq.); and a supervisor with control and authority over the Plaintiff in her terms and conditions of employment with the City of Philadelphia.

12.     CAPTAIN DAVID BELLEMY (herein after Defendant, Capt. Bellemy), a Black male, is a resident of and has domicile in the County of Philadelphia, Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.SC. § 1983 et seq.); and a supervisor with control and authority over the Plaintiff in her terms and conditions of employment with the City of Philadelphia.

13.     LIEUTENANT STEVEN MCCULLUM (herein after Defendant, Lt. McCullum) a Black male, is a resident of and has domicile in the County of Philadelphia, Pennsylvania; he is a person as intended by the Civil Rights Act of 1964 (42 U.SC. § 1983 et seq.); and a supervisor with control and authority over the Plaintiff in her terms and conditions of employment with the City of Philadelphia.

IV.   **FACTS**

14.     On or about January 2, 1995 Plaintiff was hired by Defendant, City of Philadelphia Police Department ("PPD"), as a Police Officer.  In 2004 Plaintiff was promoted to the rank of Sergeant.

15.     In 2007 Plaintiff was assigned to the 18th Police District.

3

16.     Plaintiff is outwardly associated with the Guardian Civil League ("GCL") beginning in 2005 to the present.  In 2008 Plaintiff was elected to the GCL executive board as Financial Secretary, and in 2009 was elected to the position of Treasure.  The GCL is a private organization, comprised of law enforcement officers City wide; this includes university police officers, PPD, sheriffs, and officers from various boroughs outside of Philadelphia.  The GCL is not an internal organization restricted to the PPD.

17.     In or about July 2009 Plaintiff engaged in protected free speech activity by speaking out to the press regarding the "domelight" website of the Philadelphia Police Department, which encouraged racial postings against Black police officers.

18.     Also, in or about July 2009, Plaintiff engaged in the protected First Amendment activity when the GCL spoke out publicly to Fox News about the abuse of the "domelight" website, where officers were using the website to make inappropriate racial comments which were discriminatory against Black officers in the Philadelphia Police Department.  Comments were made such as; "more Blacks are being promoted because they are cheating on exams", and calling one Black officer a "welfare to work mom".  Plaintiff appeared on the news on behalf of the GCL and made comments to the Fox News reporter.

19.     In 2009 Plaintiff's direct supervisors were Capt. Hugh Lynch (White male), and Lt. Steve McCullum (Black male).

20.     On or about August 7, 2009 Plaintiff was **denied vacation time** which had been previously approved by Lt. McCullum.   Lt. McCullum denied ever granting the vacation time.

21.     In or about August 2009 Lt. McCullum approached Plaintiff and asked him, **"why did you speak out against "domelight? You made the Philadelphia Police Department mad on both sides.  Why don't you just let your president speak".**  These remarks were intimidating and were of such a nature as to discourage an average person in Plaintiff's position from exercising their First Amendment right to free speech or association.

4

22.     On or about September 4, 2009 Plaintiff was needlessly **"time checked" over the police radio by Capt. Lynch.**  "Time checks" are normally conducted when a job needs to be assigned or to record an officer's location; in Plaintiff's situation there were no jobs in progress and Plaintiff was inside the headquarters building.  Capt. Lynch later called Plaintiff on his cell phone and reprimanded him for not responding to the radio call.

23.     On or about September 6, 2009 Plaintiff was **put on street patrol** via Capt. Lynch and Lt. McCullum.

24.     On or about March 7, 2009 Plaintiff was injured on duty ("IOD") and did not return to work until July 17, 2009.    **While out on "IOD", Capt. Lynch and Lt. McCullum ordered Plaintiff to submit "Annual Performance Reports"** for his subordinate officers; this is not common for officers out on "IOD".  Plaintiff has personal knowledge that another Sergeant Beverly Pembroke (black, female), who was out on "IOD", and was not ordered to submit annual evaluations.  The difference between Plaintiff and Sgt. Pembroke is that Plaintiff was associated with the GCL and spoke out publicly against "domelight".

25.     In or about April 2009, while Plaintiff was still out on "IOD", Capt. Lynch and Lt. McCullum allowed an **embarrassing photo of Plaintiff** to be posted in headquarters.

26.     On July 17, 2010 Plaintiff returned to work.

27.     On or about July 17, 2010 Plaintiff applied for **training but was denied**.

28.     On or about September 16, 2010 Plaintiff submitted a **transfer request.**  Capt. Lynch and Lt. McCullum would not sign off on the memo, and it did not get passed up the chain of command to the transfer review board until almost a month later.

29.     On September 22, 2010 Plaintiff submitted a vacation request memo to Lt. McCullum for October 2, 3, and 4, 2010.   The request was never approved or denied.  **Plaintiff was carried "W"** ("approved leave without pay") for October 3rd and 4th supposedly because he did not submit his vacation request memo directly to the Captain.   Capt. Lynch implemented a

new procedure that officers must submit a request memo directly to the Captain; however Plaintiff was unaware of the procedure since it was implemented while he was out on "IOD". Plaintiff has personal knowledge that Sgt. Pembroke was carried "vacation time" without submitting a memo directly to the Captain.  The difference between Plaintiff and Sgt. Pembroke is that Plaintiff was associated with the "GCL" and spoke out publicly against "domelight". Plaintiff is also aware of another officer, Sgt. Charles Mariston, who took vacation without submitted a memo directly to the Captain but were not carried "W".  The difference between Plaintiff and Sgt. Charles Mariston is that Plaintiff was associated with the "GCL" and spoke out publicly against "domelight".

30.     On or about October 12, 2010 Plaintiff file a grievance with the Fraternal Order of Police ("FOP") for violations of the collective bargaining agreement, specifically that he was wrongly carried as "W" for taking vacation days.

31.     In addition, the executive board of GCL would have meetings with Commissioner Ramsey.  At one of these meetings Plaintiff spoke up about discrepancies in the PPD discipline system.   At another, Plaintiff addressed possible corruption in the SouthWest division.

32.     In July 2009 the GLC **initiated a federal lawsuit** against the City of Philadelphia alleging violations of racial discrimination and hostile work environment, and that the City facilitated and/or acquiesced to the use of racial comments on the police forum, "domelight".

33.     Throughout the lawsuit Plaintiff was acting as the treasurer of the GCL and actively involved in the lawsuit; getting documents to lawyers, being interviewed on the news, and attending court hearings.   Plaintiff's involvement with the GCL was publically known throughout the PPD; mail is sent out on a regular basis throughout the PPD which includes Plaintiffs name; flyers are posted with Plaintiff's name on them, etc.  In addition Plaintiff had multiple meetings as a member of the GCL executive board, with Commissioner Ramsey and the Deputy Commissioners.

6

34.     Plaintiff spoke out on two separate occasions and gave interviews to the News media regarding the GCL lawsuit against the City.  During these interviews Plaintiff was acting as a private citizen and member of the GCL, not as a member of the PPD.

35.     In approximately **June 2011** there was a settlement agreement between the GCL and the City of Philadelphia.  The agreement stated that monies in the amount of $100,000.00 were to be paid by the City to the GCL and other Plaintiffs, and training was to be implemented in the PPD for discrimination and diversity.

36.     **Lt. McCullum,** dating back to 2007, **had knowledge** of Plaintiffs' involvement with the GCL because Plaintiff spoke to him on multiple occasion of upcoming GCL events and his involvement in the those events.

37.     **Capt. David Bellemy** began in approximately November 2010.  Capt. Bellemy **had knowledge** of Plaintiffs' involvement with the GCL because he was a prior member of the GCL and taught PPD promotion classes with Plaintiff, and he also attended GCL events. In 2007 Rochelle Bilal was elected president of the GCL.  Plaintiff observed that Capt. Bellemy and Ms. Bilal did not get along, and had conversation with Ms. Bilal to that extent that she admitted that she did not have a good relationship Capt. Bellemy, and that he would constantly give her a hard time getting supplies and equipment for GCL functions.  At some point prior to the 2009 lawsuit Lt. Bellemy stopped paying membership dues and lost his membership to the GCL.

38.     On September 4, 2011 Plaintiff called Lt. McCullum to ask him verbally for funeral leave, and Lt. McCullum granted Plaintiff a leave of absence.  Upon returning to work Plaintiff submitted documentation from the funeral to Lt. McCullum.   On September 23, Lt. Sprowall gave Plaintiff a note, stating that Plaintiff needed to submit an official memo to the Commanding officer asking for funeral leave. Plaintiff complied and submitted a formal memo requesting funeral leave to Capt. Bellemy.  **On October 3, 2011 Plaintiff then received a counseling memo from Capt. Bellemy for submitting the funeral memo "late".**  Per the

Directives, leave of absence memos only need to be submitted *prior* to the leave for family medical or military leave.  Leave of absence memos for funeral leave can be submitted *after* the leave is taken, so longs as a memo is properly submitted at a subsequent time.  *Plaintiff is aware of a similar instance where P/O Hartnott requested military leave without the proper documentation, but Capt. Bellemy did not counsel them.

39.    **In October 2011 Plaintiff was detailed to the 19th District.** This was retaliatory because Plaintiff was a senior supervisor and details are usually given to the youngest supervisor.  He was told that the detail was because a Sergeant in the 19th had an EEO complaint filed against him and had to switch districts with another Sergeant. Plaintiff had previously been told by Lt. McCullum and Sgt. Poliard that Poliard was going to be detailed to the 19th based on his seniority and schedule (Poliard had the least time at the 18th as Sergeant). The decision to detail Plaintiff and not Poliard was made by Capt. Bellemy.

40.    In December 2011, while detailed to the 19th District, Plaintiff's residence was broken into while his wife and four children were present.  Plaintiff arrested the perpetrator and reported the crime to SouthWest Detectives. The perpetrator was prosecuted accordingly and given a plea bargain.

41.    After the **perpetrator was taken into custody Capt. Bellemy, from the 18th District, interviewed the Defendant to acquire if Plaintiff harmed him in any way during the arrest.**  It is not the proper protocol for a Commanding Officer to interview a Defendant, when they are not in charge of or involved with the criminal investigation.  This action by Capt. Bellemy was retaliatory for Plaintiff's continued association with the GCL, speaking out against domelight, and the involvement in the lawsuit.

42.    On March 26, 2012 Plaintiff requested formal discipline to be taken against his subordinate officer, Cpl. Sheila Pressley for insubordination.   Plaintiff's request for discipline against Cpl. Pressley was denied, and **Plaintiff was issued a counseling memo for**

"**quarreling on duty" and a second counseling memo for "breaking the chain of command"** by submitting a copy of his request to Inspector Dennis Wilson.

43.    On or about August 2012 **Plaintiff was issued formal discipline (18s) for "Neglect of Duty",** for giving officers vacation time against Capt. Bellemy's orders.  Plaintiff had granted 4 officers vacation time on a "fat day" when the District was over scheduled and there were not enough vehicles for officers.  In Plaintiff's time at the 18th District, for over 5 years, it was a custom on "fat days" for those officers who do not have a vehicle after partners were assigned to be sent home.  On that date, a total 12 officers went home "vacation", Sgt. Paliord and Lt. McCullum being responsible for allowing the other 8 officers to leave "vacation". *This action was both discriminatory and retaliatory because none of the other 12 officers, including Sgt. Paliord or Lt. McCullum were issued discipline or even counseled.  Plaintiff pleaded "not guilty" to the charges, was given a PBI hearing, found guilty, and given a **punishment of 5 days suspension, which was upheld and issued by Commissioner <u>Ramsey.</u>** (prior to this, on September 11, 2011, Plaintiff's gun stolen. He was issued discipline, pled guilty, and received a "reprimand" and 3 days suspension. Plaintiff was within the reckoning period during *this* incident).

44.    **Since 2011, Plaintiff has been on the promotions list, specifically #41 of the list, but Commissioner <u>Ramsey</u> continually, and purposely, skipped over for promotion to Lieutenant.**  The PPD alleges that he was not promoted because there were two open complaints on him; 1) an IAD investigation for splitting time with another supervisor (2010), and 2) a CAP against him by his tenant (2011).

45.    Plaintiff was exonerated for both complaints in February 2013, and was given a second pre-promotional interview.  During the interview, Plaintiff was told that he was not going to be promoted again, because he arrived on duty without his issued gun; the gun had previously been stolen on September 11, 2011, to which he pled guilty and received a

"reprimand" and 3 days suspension.  Plaintiff was within the reckoning period during the time of this promotion.

46.      *Plaintiff is aware of other officers who were promoted during their reckoning period; Lt. Negal, (White male), at the 25th District, was promoted to Lieutenant while on a reckoning period for insubordination and neglect of duty; and Inspector Anthony Washington (Black male) was promoted to Inspector while having open complaints against him for sexual harassment and use of force.  The difference between Plaintiff and these officers is that they were not associated with the GCL and they did not speak out publically against discrimination and violations of civil rights by the PPD; including but not limited to, speaking out against "domelight" and the lawsuit between the GCL and City of Philadelphia.

47.      **On July 25, 2012 Plaintiff requested a transfer out of the 18th District, to the 35th District.**   Plaintiff's request was **denied** multiple times because of alleged incorrect wording in the request.  This reasoning, is not legitimate because nowhere in the directives does it specify that type of wording needs to be used in a "hardship memo" for it to be granted.

48.      Plaintiff was eventually transferred from the 18th to 35th District on August 12, 2012, after he changed his memo from stating he was "stressed", to stating that he wanted to "fresh start".  His current supervisors at the 35th District are Lt. Steve Gonzlas, and Capt. Fredricksoff.

IV.      **CAUSES OF ACTION**

COUNT I
42 U.S.C. § 1983 et seq.
First Amendment Retaliation
Butts v. Ramsey, Bellemy and McCullum

49.      Plaintiff incorporates all preceding paragraphs hereto and as though repeated verbatim.

50.      Plaintiff exercised his First Amendment Right to freedom of association by being an active and known member of and/or associated with the Guardian Civic League.

10

51.     Plaintiff further engaged in United States First Amendment free speech activity as follows; a) In or about July 2009 Plaintiff spoke out to the press regarding the "domelight" website of the Philadelphia Police Department, which encouraged racial activity against Black police officers; b) In or about July 2009 the GCL spoke out publicly to Fox News about "domelight" and the discrimination against black officers in the Philadelphia Police Department.  Plaintiff appeared on the news on behalf of the GCL and made comments to the Fox News reporter; c) In July 2009 the GLC <u>initiated a federal lawsuit</u> against the City of Philadelphia in which Plaintiff was actively involved; d) Plaintiff spoke out on two separate occasions and gave interviews to the News media regarding the GCL lawsuit against the City.

52.     In approximately <u>June 2011</u> there was a <u>settlement agreement</u> between the GCL and the City of Philadelphia.  The agreement stated that monies in the amount of $100,000.00 were to be paid by the City to the GCL and other Plaintiffs, and training was to be implemented in the PPD for discrimination and diversity.

53.     The aforementioned activity is and was at the time recognized and clearly established to be First Amendment free speech or association activity, which activity is and was known by the Defendants to be protected activity under the United States Constitution.

54.     Plaintiff was speaking as a private citizen when he spoke to the press and Fox News regarding "domelight" activity and the lawsuit between the GCL and the City of Philadelphia.  Plaintiff did not have an official duty as a police officer to publicly speak out against "domelight", a website which promoted racism in the Philadelphia Police Department and which was created by officers of the Philadelphia Police Department, nor did he have a duty as a police officer to initiate a lawsuit against the City regarding discrimination or speak publicly about the lawsuit.

55.     The "domelight" website was a public forum and its contents were of public importance **as the website initially dealt with** issues of public safety and other concerns of

the police department  And because it was maintained by those in public service and by the taxes of the citizens of the City of Philadelphia.   The lawsuit was also filed in a public forum and of public concern because it addressed the issues of "domelight", a public website, and the implementation of discrimination training to those in public service; specifically the PPD.

56.     The following adverse actions were taken in **retaliation** of Plaintiff's free speech and association activity, which include but are not limited to; a) denied vacation time; b) being intimidated by Lt. McCullum when he said, "why did you speak out against "domelight"? You made the Philadelphia Police Department mad on both sides"; c) "time checked" over the police radio by Capt. Lynch; d) being placed on street patrol; e) ordered to submit performance evaluations while out on "IOD"; f) Capt. Lynch and Lt. McCullum allowed an embarrassing photo of Plaintiff to be posted in headquarters.  g) again denied vacation time and carried as "W"; h) denied training; i) issued counseling and formal discipline; and j) denied promotion and transfer requests.

57.     The substantial and/or motivating reason for the adverse actions taken against Plaintiff was his free speech activity of speaking out against "domelight" to the media, being involved in the GCL lawsuit and settlement, and being associated with the GCL.

58.     Defendants acted in concert with others, and while knowing or should have known that their acts together or alone would or were likely to deprive Plaintiff of federally protected rights, such as in her property and equal protection interests in her employment or state provided or contractually entitled employment benefits.

59.     Plaintiff, as a result of the Defendants acts, action or omissions, sustained both economic damages, such as lost sages, lost benefits attendant to the employment, and attorney fees, and sustained personal injury, such as embarrassment, humiliation and emotional distress.

60.    The proximate, direct, or legal cause of Plaintiff's injury and damages was and is the Defendants' acts, action or omissions and the conduct done under color of state law, which conduct, acts, action and omissions deprived the Plaintiff of federally secured rights, privileges and immunities, such as the First and Fourteenth Amendments.

COUNT II
42 U.S.C. § 1983 et seq.
Race Discrimination
Butts v. Ramsey, Bellemy and McMullum

61.    Plaintiff incorporates all preceding paragraphs hereto and as though repeated verbatim.

62.    Plaintiff, because of his race has been treated unequally or differently by the Defendants in the terms and conditions of employment and contract rights; including but not limited to the following incidents;

a) On October 3, 2011 Plaintiff then received a counseling memo from Capt. Bellemy for submitting the funeral memo "late".  Per the Directives, leave of absence memos only need to be submitted *prior* to the leave for family medical or military leave.  Leave of absence memos for funeral leave can be submitted *after* the leave is taken, so longs as a memo is properly submitted at a subsequent time.  *Plaintiff is aware of a similar instance where an officer requested military leave without the proper documentation, but Capt. Bellemy did not counsel them; and

b) On or about August 2012 Plaintiff was issued formal discipline (18s) for "Neglect of Duty", for letting 4 officers leave early on "vacation time" against Capt. Bellemy's orders.  On that date, a total 12 officers went home "vacation"; Sgt. Paliord and Lt. McCullum being responsible for the other 8 officers leaving "vacation".  *This action was both discriminatory and retaliatory because none of the other 12 officers, including Sgt. Paliord or Lt. McCullum were issued discipline or even counseled.

13

c) Plaintiff's formal discipline and penalty was upheld and issued by Commissioner Ramsey.

63. Plaintiff's unequal treatment by the Defendants is motivated because of Plaintiff's race and Defendants amicus for the Plaintiff's race.

COUNT III
42 U.S.C. § 1983 et seq.
Monell
<u>Butts v. City of Philadelphia</u>

64. Plaintiff incorporates all preceding paragraphs hereto and as though repeated verbatim.

65. The City of Philadelphia has a policy to and/or fails to supervise and/or train its employees and supervisors. Further, under the policy, the City condones, acquiesces and ratifies retaliation against persons and employees for engaging in protected First Amendment activities. Under the policy, the City also condones, acquiesces and ratifies such retaliation by its employees and supervisors, such as Capt. Lynch, Capt. Bellemy and Lt. McCullum.

66. The City of Philadelphia, under its policy, treats unequally and differently persons similarly situated as Plaintiff. Plaintiff was treated differently than other employees because he engaged in protected free speech and association activity; specifically Plaintiff was treated differently than, but not limited to, Sgt. Beverly Pembroke, Sgt. Charles Mariston and P/O Elaine Thomas. The difference between Plaintiff and Sgt. Charles Mariston and P/O Elaine Thomas is that Plaintiff was associated with the "GCL" and spoke out publicly against "domelight".

67. The City of Philadelphia has failed to property supervise and/or train its employees and supervisors, including Capt. Lynch and Lt. McCullum, in the civil and constitutional rights of its employees, and to the property use of the City's disciplinary rules, as so to avoid deprivation of the civil and constitutional rights of employees. Such failure to train

14

and/or supervise was known by the City to exist and known to likely lead to deprivation of civil and constitutional rights.

68.    Plaintiff believes and therefore avers, that the City of Philadelphia has a policy, practice or custom, established by the actions of its supervisors, who possess final authority and supervisory power within the Police Department, to misuse its disciplinary system to chill federal rights, such rights as, but not limited to free speech and association.

69.    Defendants conduct, as described above, is unlawful, and a practice which the Defendants were or should have been aware when they engaged in the conduct, that such conduct violates clearly established rights which would subject them to liability under 42 U.S.C. § 1983.

70.    Defendants' acts, action or omissions and the City's policy, practice and custom caused Plaintiff to be deprived of federally secured rights, privileges and immunities; to suffer economic damages, such as loss of property, employment, good name, wages and benefits attendant to employment, and to sustain personal injuries.

71.    Defendants' conduct was extreme and outrageous and conduct that was malicious, ill willed, from evil hearts, and such that society is unwilling to accept for public officials and persons.

V.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays the Court enter judgment for him and against the Defendants; to hold the Defendants joint and several liable; to award the Plaintiff such relief as to make Plaintiffs whole, including such relief as, but not limited to, compensatory and consequential and punitive damages, front and back pay, negative tax consequence relief, reasonable attorney fees, litigation costs, and any and all other such relief, including equitable relief, allowed by law or that the Court deems proper and just. Including reinstatement, declaring the Defendants acts, actions or omissions and conduct to have violated the Plaintiff's constitutional rights, the policy practice or custom unconstitutional, overly broad or sweeping, and to enjoin the City and all employees of the City from aiding or abetting the policy practice and custom declared unconstitutional.


Date:   June 12, 2013                              Respectfully submitted,

                                                   BY
                                                    Alexis I. Zafferes, Esq.
                                                   Attorneys for Plaintiff
                                                   LAW OFFICES OF BRIAN M. PURICELLI
                                                   691 Washington Crossing Rd.
                                                   Newtown PA 18940
                                                   (215) 504-8115/ 8116

16