## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAUN BUTTS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 13-3374** |
| | : | |
| **CHARLES RAMSEY, et al.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                    **FEBRUARY 25, 2014**

Before the Court are Defendants' motion to dismiss and Plaintiff's response thereto. For the reasons below, the motion will be granted in part and denied in part.

### I.        Background[1]

Plaintiff, Shaun Butts, is a sergeant in the Philadelphia Police Department ("PPD"). The Defendants are the City of Philadelphia, Commissioner of Police Charles Ramsey, Captain David Bellemy of PPD, and Lieutenant Steven McCullum, also of PPD.

Butts joined PPD in January of 1995, and in 2005 he joined the Guardian Civic League ("GCL"). GCL is an association of Philadelphia area law enforcement officers that, among other things, advocates against racial discrimination within PPD. Butts has been GCL's treasurer and a member of its executive board. By 2009, GCL had become aware of racist comments posted on Domelights.com, a website that provided a forum for discussions, the participants of which were mostly Philadelphia police officers. Butts and GCL criticized Domelights.com to the local media, and in July 2009, GCL sued PPD alleging in part that posts on Domelights.com reflected

---

[1] The facts in this opinion are adopted from Complaint, Doc. No. 1; its allegations are taken as true, and all reasonable inferences are drawn in favor of the Plaintiff.

and nurtured a hostile work environment.[2] Butts participated in this lawsuit by providing documents to lawyers and attending court hearings. He also had several meetings with Ramsey, and Bellemy had worked with Butts when Bellemy was a member of GCL, before a falling out between Bellemy and GCL's current president caused Bellemy to relinquish his GCL membership.

Shortly after GCL filed its lawsuit, Butts faced adversity at work. McCullum criticized Butts for speaking out against Domelights.com; Butts's supervisors began subjecting him to increased scrutiny and changing his work responsibilities; and his supervisors allowed an embarrassing photograph of Butts to be posted at police headquarters. In September 2010, Plaintiff submitted a transfer request, which was denied, and in the same month, he requested vacation, but was only approved for leave without pay. Butts has pointed to several other police offers who were granted requests similar to his who had not spoken out publicly about Domelights.com.

In October 2011, Butts's problems at work resurfaced. He sought leave to attend a family funeral, and received a "counseling memo," a form of discipline within PPD, chastising him for requesting the leave late, even though it was timely and other police officers had submitted untimely leave requests without suffering discipline. That same month, he was detailed to a district where he did not want to serve, despite the fact that a more junior officer was available for the detail and ordinarily would have been assigned. In December 2011, Butts's house was broken into. Butts arrested the perpetrator, and Bellemy interfered with the investigation, breaking the usual investigatory protocol and inquiring whether Butts had harmed the perpetrator.

---

[2] *Guardian Civic League, Inc. v. Philadelphia Police Dep't*, No. 09-cv-3148 (E.D. Pa. July 15, 2009).

At some point in August 2012, the district to which Butts was assigned experienced a "fat day," which happens when too many officers are scheduled for duty. There were not enough cars to accommodate all the officers, and Bellemy ordered supervisors like Butts not to grant anyone vacation time. Notwithstanding Bellemy's order, Butts, McCullum, and a Sergeant Paliord granted vacation to twelve officers. Ramsey suspended Butts for five days, but neither McCullum nor Paliord was disciplined.

Butts's final set of relevant allegations concern Ramsey's failure to promote him. Since 2011, Butts has been #41 on the PPD promotions list, but Ramsey has repeatedly declined to elevate him to the rank of lieutenant. Until February 2013, the reason given for the denials was that there were two complaints open against Butts. During that month, Butts was exonerated for both complaints, and he was later told that the reason he was not being promoted was that he was still within the "reckoning period" for a September 2011 infraction of reporting for duty without a gun. However, one officer who was not a member of GCL was promoted despite open complaints against him for sexual harassment and excessive force, and another officer who was of a different race from Butts was promoted during the reckoning period for insubordination and neglect of duty.

## II.    Standard of Review

In order to survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] Additionally, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4] A plaintiff who survives a motion to dismiss for failure to state a claim on which relief

---

[3] Fed. R. Civ. P. 8(a)(2).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

may be granted states facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[5]

### III.   Discussion

#### A.   First Amendment Retaliation Claims

In order to state a claim for retaliation under § 1983, "a public employee must demonstrate that (1) he or she engaged in activity that is protected by the First Amendment, and (2) the protected activity was a substantial factor in retaliatory action by the employer."[6] The first inquiry is a question of law, the second of fact.[7] To establish that the activity was protected by the First Amendment, the plaintiff must show that he or she spoke as a citizen on a matter of public concern or associated with a group in order to promote speech on a matter of public concern.[8] After making this showing, the plaintiff must persuade the court that the employee's interest "as a citizen, in commenting upon matters of public concern" outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[9]

---

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[6] *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012).

[7] *Id.*

[8] When claims "implicate associational rights in essentially the same way and to the same degree" as speech rights, the Third Circuit applies the case law developed under free speech claims. *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 400 (3d Cir. 1992); *see also Gorum v. Sessoms*, 561 F.3d 179, 185 n.4 (3d Cir. 2009) ("Even had Gorum not waived the issue, we note that his associational claim is linked closely enough with his free-speech claim to justify application of the citizen-speech and public-concern requirements."); *see also Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004) ("We agree with the defendants and, joining the Fourth, Sixth and Seventh circuits, hold that a public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern."). In this case, Butts alleges that Defendants took adverse employment actions against him because of his membership in an advocacy organization and because of his role in that organization's advocacy. It is therefore appropriate to examine his free association claim by analogy to free speech claims, without reference to cases analyzing the freedom of intimate association. *Cf. Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 438 (3d Cir. 2000).

[9] *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Defendants argue that Butts's First Amendment claim fails because "the complaint does not specify any content of speech the plaintiff engaged in whatsoever."[10] It is true that the Complaint states only that Butts spoke "to the press regarding the 'domelight' website," before detailing what unidentified members of GCL said.[11] However, even if the Complaint's allegations regarding Butts's speech are thin, his claim is not that Defendants interfered with just his right to free speech but also his First Amendment free association right. Defendants have not argued that Butts's membership in GCL is unprotected by the First Amendment, and Butts has argued that he was discriminated against for associating with GCL. The complaint makes clear that GCL engaged in advocacy on a matter of grave public concern, namely alleged pervasive racism at PPD, and it alleges that Butts was a member of GCL in order to promote its expressive agenda and indeed participated actively in GCL's media campaign and lawsuit. In the absence of argument to the contrary, the Court concludes that Butts has alleged sufficiently that his membership in GCL and his participation in the organization's advocacy amounted to "activity protected by the First Amendment."[12]

Since Butts has satisfied the first prong of the test for whether he has stated a claim under § 1983, the court must examine whether "the protected activity was a substantial factor in retaliatory action by the employer."[13] Because this is a question of fact, the Court need only consider whether the complaint, accepted as true, presents enough information for a reasonable factfinder to conclude that Butts's GCL membership was a substantial factor in any adverse employment actions taken against him.

---

[10] Doc. No. 4 at 8.

[11] Doc. No. 1 at ¶¶17–18.

[12] *Morris,* 487 F. App'x at 39. *Cf. Roberts v. U.S. Jaycees,* 468 U.S. 609, 622 (1984) ("We have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.").

[13] *Morris,* 487 F. App'x at 39.

Defendants argue that there is a considerable time gap between, on the one hand, GCL's criticism of Domelights.com and the ensuing litigation, and, on the other, the allegations of adverse employment actions that have occurred within the relevant statute of limitations.[14] The statute of limitations bars claims based on actions prior to June 17, 2011. Butts's earliest alleged adverse employment action occurred in August 2009, shortly after the GCL filed suit against Philadelphia because of the Domelights.com, when McCullum denied a request for vacation. He alleges a series of wrongful actions against him that continued until September 2010. The Complaint does not refer to any adverse employment actions between September 2010 and September 2011; instead, Defendants' allegedly unconstitutional behavior recommenced in September 2011, when Butts was issued a counseling memorandum reprimanding him for taking funeral leave.[15]

Defendants do not argue, nor could they, that all conduct that occurred outside the statute of limitations period is irrelevant to Butts's case of retaliation. As the Supreme Court has held, a statute of limitations does not begin to run in a § 1983 action until the "plaintiff has a complete and present cause of action."[16] Even if some discrete violations actionable under § 1983 occur outside of the statutory period, those discrete violations that occur within the two years before the suit is filed are actionable.[17] Plaintiff has undeniably alleged certain adverse employment actions within the limitations period;[18] the question is whether he has alleged enough facts that a

---

[14] The statute of limitations for § 1983 claims originating in Pennsylvania is two years. *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000); 42 Pa.C.S. § 5524.

[15] Doc. No. 1 at ¶ 38.

[16] *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks omitted).

[17] *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006); *cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

[18] Doc. No. 1 at ¶¶ 38–47.

reasonable jury could conclude that his exercise of First Amendment rights was a motivating factor in the adverse employment actions that occurred within the limitations period.

The Court concludes that the Complaint alleges facts sufficient to draw the inference that Butts's membership in GCL was a motivating factor in the 2011–2012 employment actions. Although Butts made media appearances in 2009 and GCL's lawsuit against Philadelphia was filed that same year, the lawsuit was not settled until June 2011, shortly before the tensions with Butts's supervisors recommenced.[19] Even if the settlement date did not catalyze additional problems at work for Butts, the ongoing nature of the litigation underscores the significance of the Domelights.com scandal. For the purposes of the motion to dismiss, it is plausible to draw the inference that Butts's advocacy related to Domelights.com created long-simmering tensions with his employers that continued to manifest themselves two and three years after the initial media coverage of the activity on that site. Domelights.com gained widespread notoriety for PPD—fairly or not—as having an atmosphere of racial intolerance, and the passage of a year or two could have allowed ill will in the Department just as easily to fester as to heal, particularly as litigation against PPD was pending at that time.[20] Moreover, Butts alleges that other police officers in substantially the same position as he was who were not GCL members did not suffer

---

[19] *Guardian Civic League v. Philadelphia*, No. 09-cv-1348, Doc. No. 48 (June 29, 2011).

[20] The Court notes additionally that the settlement agreement that was executed shortly before Butts's renewed difficulties at work included the following provision: "For a period of six months, to begin in the month after the full execution of this Agreement, the Department will have a supervisor at roll call read its anti-discrimination policy and the City's policy prohibiting use of City equipment to access non-work-related websites, such as Domelights.com. The policy readings will occur in the first three days of each month at the beginning of each new shift. In addition, the City will read the contents of paragraph seven (7), above, at the said roll calls. The readings will continue until each police officer in each district has heard the readings." *Id.* at ¶ 9. The Court may take judicial notice of this settlement agreement, which is a matter of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006), *D.V. v. Pennsauken Sch. Dist.*, No. 12-cv-7646, 2013 WL 4039022, at *3 & n.4 (D.N.J. Aug. 7, 2013). The provision of the settlement agreement is not necessary to support the inference that Butts's 2011 and 2012 work problems resulted from his involvement in GCL, but the timing of the adverse employment actions, in clusters starting in Summer 2009 when the litigation started and again in Fall 2011 shortly after a settlement that would have brought the litigation to the attention of "each police officer in each district" is at least suggestive that the second string of adverse employment actions was related to GCL and Domelights.com.

the same adverse treatment that he did. For example, Butts was denied promotions between 2011 and 2013 because of open complaints and a disciplinary infraction, and he lists two non-GCL police officers with similarly tarnished records who were promoted. Although the gap in the series of adverse actions could support Defendants' theory of the case, the Court may not draw that inference at this stage, when Butts's allegations of retaliatory motive are also plausible.

With respect to McCullum, however, the statute of limitations does bar Butts's First Amendment claims. Butts has pleaded no facts that could subject McCullum to liability and that occurred after June 17, 2011, and therefore this suit cannot be maintained against him.

*B.*     *Racial Discrimination Claim*

Racial discrimination claims are analyzed under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*.[21] That means Butts must first make out a *prima facie* case of discrimination, after which the burden of production will shift to Defendants to articulate a non-discriminatory reason for the adverse employment actions, and then the burden will shift back to Butts to show that the proffered explanations are pretextual.

Defendants argue only that Butts's racial discrimination claim ought to be dismissed because he fails to state a *prima facie* claim. The Third Circuit has characterized the *prima facie* case as "easily made out"[22] and posing a "low bar."[23] In order to state a *prima facie* claim of violation of § 1983 in the employment context, the plaintiff must show "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an

---

[21] 411 U.S. 792, 802–03 (1973).

[22] *Ezold v. Wolf,* 983 F.2d 509, 523 (3d Cir. 1993).

[23] *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

adverse employment action despite being qualified; . . . (4) under circumstances that raise an inference of discriminatory action."[24]

Defendants contend that Butts has only alleged two incidents of retaliatory conduct, the October 3, 2011, counseling memo and the August 2012 formal discipline. Defendants misread the complaint. Although these are the only retaliatory actions referenced in the "Count II" section of the complaint, the Court must read the complaint as a whole.[25] The complaint alleges that Bellemy issued a counseling memo reprimanding Butts for submitting a leave request late, that Bellemy detailed Butts to a less desirable district, and that Bellemy interfered with an investigation into the invasion of Butts's home after Butts arrested the perpetrator. And according to the complaint, Ramsey "upheld and issued" a five day suspension for neglect of duty and skipped over Butts for promotion several times.[26]

Defendants first argue that the counseling memo was not an adverse employment action within the meaning of § 1983 cases. Even assuming for the purposes of this motion that they are correct, detailing Butts to a less desirable district would have constituted "a significant change in employment status, such as . . . reassignment."[27] Similarly, the failure to promote Butts is

---

[24] *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). In *Sarullo*, the full fourth factor was that "under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Id.* Since this case does not involve wrongful termination or failure to hire, the fourth factor "must be tailored to fit the specific context in which it is applied." *Id.* at 798. The Court agrees with Defendants that if Butts shows that the circumstances under which he suffered adverse employment actions give rise to an inference of discrimination, then he has satisfied the fourth factor.

[25] *Pegram v. Herdrich*, 530 U.S. 211, 230 & n.10 (2000) ("[W]here specific allegations clarify the meaning of broader allegations, they may be used to interpret the complaint as a whole . . . Though this case involves a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the complaint should therefore be construed generously, we may use Herdrich's brief to clarify allegations in her complaint whose meaning is unclear.").

[26] Doc. No. 1 at ¶ 43.

[27] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

unquestionably an adverse employment action.[28] Therefore, Butts has satisfied the adverse employment element of his *prima facie* burden.

Defendants next argue that even if Butts has alleged adverse employment actions, he has also failed to make a *prima facie* showing that the actions were taken because of his race. They argue that McCullum, who also disobeyed Bellemy's order regarding vacation time, was not disciplined and is of the same race as Butts. Defendants' argument is too simplistic. First, it is based on a parsimonious reading of Count II, which the Court has already rejected (Defendants make no argument about whether the other adverse employment actions were racially motivated). And second, it fails to understand the substance of Butts's allegations. Butts complained that he was retaliated against for being a black man who spoke out against racism. Part of the retaliation is based on his speech (or association with GCL), and part of it is based on his race. A fair reading of the complaint is that Butts alleges that Defendants enforced a code of behavior that punished black police officers who spoke out and rewarded those who stayed silent. A person who chooses his targets for repression in substantial part on the basis of race discriminates on the basis of race even if some members of the affected racial group do not suffer the same concrete harms as others.[29]

It is important to note that Defendants' arguments in support of the motion to dismiss the racial discrimination claims are extremely limited. First, they only target the instances referred to in the "Count II" section of the complaint, without reading the complaint as a whole, and second

---

[28] *Id.*

[29] *Cf. Paul v. F.W. Woolworth Co.*, 809 F. Supp. 1155, 1162 (D. Del. 1992) ("As plaintiff points out, the fact that another minority member happened to fill the position which plaintiff sought has been held not to preclude a Title VII claim. As the United States Court of Appeals for the Tenth Circuit has said, 'that a member of a protected class was hired or promoted in place of a Title VII plaintiff has repeatedly been held insufficient to insulate the employer from liability.'" *Pitre v. Western Elec. Co., Inc.,* 843 F.2d 1262, 1272 (10th Cir.1988) (collecting Title VII cases)).

they allege only that Plaintiff has failed to make out a *prima facie* case of racial discrimination. As explained, Butts has met the relatively low burden of stating a *prima facie* case. Because Defendants do not offer any argument beyond Butts's *prima facie* case, the Court need not wade deeper into the *McDonnell Douglas* burden-shifting framework, and the motion as to Bellemy and Ramsey must be denied.

However, the complaint makes no allegations that McCullum engaged in any complained-of activity after June 17, 2011, the date before which all claims are barred. Therefore, Count II will be dismissed as against McCullum.

     *C.*     Monell *Liability*

Defendants argue that Butts has failed to state a theory under which Philadelphia could be held liable for the conduct alleged in the complaint. Plaintiff counters that Philadelphia is liable for the individual defendants' actions.

In order to impose liability on Philadelphia, Butts "must prove that action pursuant to official municipal policy caused" his injury.[30] Actions of an individual implement official policy in a few circumstances, including when "the individual himself has final policy-making authority such that his conduct represents official policy, or . . . a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred."[31]

Butts argues that Ramsey as Police Commissioner has final policymaking authority with respect to PPD and that therefore his actions can be fairly imputed to Philadelphia. The Third Circuit has at least twice in published opinions concluded that the Police Commissioner has final

---

[30] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal quotation marks omitted).

[31] *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).

policymaking authority in Philadelphia.[32] Specifically, where the Police Commissioner "retained the authority to measure the conduct and decisions of his subordinates" and acquiesced to the actions of his subordinates,[33] the actions of the Commissioner will be imputed to the City as long as there is sufficient evidence that the Commissioner had official "responsibilities and decisionmaking authority with respect to the conduct at issue."[34] Butts has argued that he was disciplined for failing to follow one of Bellemy's orders, that Ramsey, who had reason to know of Butts's race and affiliation with GCL,[35] "issued and upheld" the suspension personally, and that Ramsey personally passed over Butts for a promotion several times. A fair reading of the complaint is that Ramsey had final authority for personnel and disciplinary decisions in the police force. Since he was personally involved in some of the alleged retaliation and since he acquiesced in some of Bellemy's conduct, Plaintiff has stated enough factual material to keep Philadelphia in this suit at this time. Should discovery or trial demonstrate facts that limit or eliminate Philadelphia's liability, the Court will consider the City's arguments, but for now, the question before the Court is whether to dismiss the City as a defendant, and the Court holds that doing so would be premature.

## IV.    Conclusion

For the reasons stated above, Defendants' motion to dismiss will be granted in part and denied in part, without prejudice. It is granted as to Defendant McCullum and denied in all other respects. An appropriate Order follows.

---

[32] *Keenan v. City of Philadelphia*, 983 F.2d 459, 468 (3d Cir. 1992); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir. 1990).

[33] *Keenan*, 983 F.2d at 468 (internal quotation marks and citation omitted).

[34] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 265 (3d Cir. 2010).

[35] *E.g.,* Complaint, Doc. No. 1 at ¶ 33.